UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | 5:25-cv-03315-SSS-MAA | Date | December 12, 2025 |
|---|---|---|---|
| Title | *Hossein Joudi-Haghighi v. Kristi Noem et al.* | | |

Present: The Honorable     SUNSHINE S. SYKES, UNITED STATES DISTRICT JUDGE

| Irene Vazquez | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:** **(IN CHAMBERS) ORDER GRANTING IN PART PETITIONER'S APPLICATION FOR TEMPORARY RESTRAINING ORDER [DKT. NO. 3]**

    On December 9, 2025, petitioner Hossein Joudi-Haghighi ("Petitioner"), who is currently detained in the custody of Immigration and Customs Enforcement ("ICE"), filed a Petition for Writ of Habeas Corpus ("Petition") against respondents the Warden of Adelanto Detention Facility, Thomas P. Giles, James Pilkington, Kristi Noem, and Pamela Bondi ("Respondents"). [Dkt. No. 1, "Pet."]. On the same day, Petitioner filed the instant Application for Temporary Restraining Order ("Application"), seeking to enjoin Respondents from continuing to detain him or removing him to a third country without notice and an opportunity to be heard. [Dkt. No. 3, "App."].

The Court finds this matter appropriate for resolution without oral argument. *See* Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15. For the reasons set forth below, Petitioner's Application is **GRANTED IN PART**.[1]

## I.     BACKGROUND

Petitioner was born in Iran and was admitted to the United States as a lawful permanent resident on July 25, 1986. [Dkt. No. 9-1, "Suarez Decl." ¶ 5].

On or about July 14, 1995, Petitioner was convicted of burglary and possession of forged notes in state court. [*Id.* ¶ 6]. While on bail, Petitioner was convicted of second-degree burglary, forgery, and grand theft. [*Id.*]. Petitioner was sentenced to seven years in prison for these offenses. [*Id.*]. On or about October 29, 2001, Petitioner was convicted of second-degree burglary and sentenced to sixteen months in prison. [*Id.* ¶ 7]. He violated his parole on or about June 10, 2002, and he was sent back to prison to finish his sentence. [*Id.* ¶ 8].

On or about June 4, 2010, Petitioner's case in the immigration court was denied and he was ordered removed to Iran. [*Id.* ¶ 9]. Petitioner waived his right to appeal this decision. [*Id.*]. From November of 2012 to July 2020, Petitioner was convicted of theft, burglary, possession of a driver's license with intent to defraud, and receiving of stolen party. [*Id.* ¶ 10–12].

Petitioner was taken into ICE custody on June 9, 2025, to be processed for removal and served with a Notice of Revocation of Release. [*Id.* ¶ 13–14]. He has been detained at Adelanto ICE Processing Center since this date. [*Id.*]. On or about July 7, 2025, ICE submitted a travel document to its headquarters for review. [*Id.* ¶ 15]. On or about August 11, 2025, the travel document request was submitted to the Iranian authorities and remains pending. [*Id.* ¶ 16]. According to Petitioner, the Iranian consulate informed Petitioner that the Iranian government would not issue travel documents for Petitioner. [Dkt. No. 3, "Aminoff Decl." ¶ 3]. On December 9, 2025, Petitioner filed the operative Petition against Respondents, raising the following grounds for relief:

---

[1]     Because Petitioner is entitled to release based on his Revocation Claim, the Court does not address Petitioner's Detention Claim and Third Country Removal Claim.

1. **Ground One** ("Detention Claim"): Unlawful Detention, in violation of the Due Process Clause of the Fifth Amendment to the United States Constitution ("Due Process Clause") and 8 U.S.C. § 1231 ("Section 1231);

2. **Ground Two** ("Revocation Claim"): Unlawful Detention, in violation of the Due Process Clause for failing to comply with 8 C.F.R. § 241.13 ("Section 241.13") and 8 C.F.R. § 241.4 ("Section 241.4");

3. **Ground Three** ("Third Country Removal Claim"): Unlawful Potential Removal to a Third Country, in violation of the Due Process Clause and Convention Against Torture ("CAT").[2]

[Pet. at 4–10].

On December 9, 2025, Petitioner filed the instant Application. [*See generally* App.]. Petitioner requests the Court to order Respondents to (1) immediately release Petitioner from custody, (2) refrain from removing Petitioner from the United states or taking him from the Central District of California, (3) restore Petitioner to the status quo prior to his re-detention by reinstating his prior order of supervision, and (4) show cause why Petitioner's application for a preliminary injunction should not be granted. [*Id.* at 3].

On December 11, 2025, Respondents filed an Opposition. [Dkt. No. 9, "Opp."]. Respondents maintain Petitioner is not entitled to injunctive relief because (1) the Application fails to comply with Local Rule 65-1 and fails to submit proper admissible evidence, (2) Petitioner has not established there is no significant likelihood of removal in the reasonably foreseeable future, and (3) Petitioner has not made the requisite showing to shift the burden of proof to the United States because he has failed to establish any deficiency in release revocation procedure. [Opp. at 3–8]. In support of the Opposition, Respondents submit the Declaration of Jorge Suarez. [Dkt. No. 9-1, "Suarez Decl"].

---

[2] The Court considers the fourth argument on "punitive" removal practices under the third ground.

## II. LEGAL STANDARD

To justify ex parte relief, the moving party must demonstrate that it would be "irreparably prejudiced if the underlying motion is heard according to regular noticed motion procedures," and that the party is "without fault in creating the crisis that requires ex parte relief, or that crisis occurred as a result of excusable neglect." *Mission Power Eng'g Co. v. Con'l Cas. Co.*, 883 F. Supp. 488, 492 (C.D. Cal. 1995).

For the Court to grant an application for a temporary restraining order, Plaintiff must show: (1) it is "likely to succeed on the merits" of its underlying claims, (2) it is "likely to suffer irreparable harm in the absence of preliminary relief," (3) "the balance of equities tips in [its] favor," and (4) the requested injunction "is in the public interest." *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008). Additionally, the purpose of a temporary restraining order "is to preserve the status quo and the rights of the parties until a final judgment issues in the cause." *U.S. Philips Corp. v. KBC Bank N.V.*, 590 F.3d 1091, 1094 (9th Cir. 2010).

Courts in the Ninth Circuit may consider the *Winter* factors on a sliding scale and grant an injunction where the plaintiff raises "serious questions going to the merits, and a balance of hardships that tips sharply toward the plaintiff" if "the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134–35 (9th Cir. 2011) (noting that the latter two elements are "the other two elements of the *Winter* test").

## III. DISCUSSION

### A. Rule 65 Compliance

Defendants argue in their Opposition that the Application must be denied because Plaintiff failed to comply with Federal Rule of Procedure 65 and Local Rule 65-1 and because . [Opp. at 3–4].

Federal Rule of Civil Procedure 65(b)(1) provides:

> The court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if:

> (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and
>
> (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Fed. R. Civ. P. 65(b)(1).

Local Rule 65-1 requires that a "party seeking a temporary restraining order ("TRO") . . . submit an application, a proposed TRO, a declaration setting forth the facts and certification required by F.R.Civ.P. 65(b)(1)(A) and (B), and a proposed order to show cause why a preliminary injunction should not issue." C.D. Cal. L.R. 65-1.

Additionally, "when reviewing evidence presented for a preliminary injunction or a TRO, the court applies relaxed evidentiary standards for admissibility." *Aftab v. Quality Loan Serv. Corp. Washington*, No. 19-CV-01461, 2019 WL 5190879, at *2 (D. Or. Oct. 15, 2019). The court "may give even inadmissible evidence some weight, when doing so serves the purpose of preventing irreparable harm." *Native Fish Society v. Nat'l Marine Fisheries Serv.*, No. 3:12-cv-00431, 2013 WL 12120102, at *7 (D. Or. May 18, 2013) (quoting *Flynt Distrib. Co. v. Harvey*, 734 F.2d 1389, 1394 (9th Cir. 1984)).

Here, Defendants allege that the Petition and the Application contain no declaration and certification. [Opp. at 3]. In support of this allegation, Defendants cite to *Hoang v. Kristi Noem*, No. 25-CV-03177-JLS-RAO (C.D. Cal. Dec. 4, 2025), in which this Court denied a TRO application partly because the application was unaccompanied by any supporting declaration regarding the facts. However, unlike in *Hoang*, here, there is a declaration accompanying the Application that details facts that became personally known to proposed counsel for Petitioner through a phone call with Petitioner. [*See* App. at 5, "Aminoff Decl."]. Respondents argue that a phone call with a proposed client is inadequate basis for filling a TRO application. [Opp. at 4]. However, the declaration is also "based on [counsel's] investigation to date," indicating that there were facts that became personally known to proposed counsel through independent investigation, such as "conversations with several other Iranian detainees." [*Id.* ¶ 3].

Counsel's declaration also states that he and government counsel corresponded through email and phone call, and the Chief of the Complex and

Defensive Litigation Section of the United States Attorney Office for the Central District of California was given notice of this Application before it was filed. [*Id.* ¶ 6]. Attached to the Application is also a Proposed Order to Show Cause Why Preliminary Injunction Should Not Issue. [Dkt. No. 3-1].

It follows that Petitioner complied with the requirements of Federal Rule of Civil Procedure 65 and Local Rule 65-1. As such, the Court rejects Respondent's argument that this Application should be denied on this threshold issue, and the Court advances through the analysis by assessing the likelihood of success on the merits.

### B. Likelihood of Success on the Merits

The likelihood of success on the merits is the most important *Winter* factor, which "is especially true for constitutional claims." *Junior Sports Mags. Inc. v. Bonta*, 80 F.4th 1109, 1115 (9th Cir. 2023) (citing *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)). Here, the Court finds Petitioner is likely to succeed on the merits or has at least raised "serious questions" regarding the merits of his Revocation Claim.

#### 1. Legal Standard for the Revocation Claim

"Freedom from imprisonment . . . lies at the heart of the liberty" that the Fifth Amendment's Due Process Clause protects. *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). "[T]he Due Process Clause applies to all 'persons' within the United States," including noncitizens, "whether their presence here is lawful, unlawful, temporary, or permanent." *Id.* at 693. Thus, a noncitizen under an Order of Supervision ("OSUP") has a constitutional liberty interest in their continued release from immigration detention. *See Sun v. Santacruz*, No. EDCV-25-02198-JLS-JCx, 2025 WL 2730235, at *5–6 (C.D. Cal. Aug. 26, 2025) (finding the petitioner had a "substantial" liberty interest in "remaining out of immigration custody" pursuant to an OSUP and granting a TRO enjoining the respondents from re-detaining the petitioner without a pre-detention hearing before a neutral adjudicator).

8 U.S.C. § 1231(a) ("Section 1231(a)") governs the detention, release, and removal of noncitizens with an order of removal. Under Section 1231(a), a noncitizen who has been ordered removed must be detained during the 90-day removal period. 8 U.S.C. §§ 1231(a)(1)(A), (a)(2)(A). However, if a noncitizen is not removed within this period, they must be released "subject to supervision under

regulations prescribed by the Attorney General." *Id.* § 1231(a)(3). While certain noncitizens may be detained beyond the 90-day removal period, such noncitizens, if released, must be subject to the same terms of supervision as under Section 1231(a)(3). *Id.* § 1231(a)(6).

Section 241.4 and Section 241.13 set the terms of supervised release under Section 1231(a)(3) and 8 U.S.C. § 1231(a)(6) ("Section 1231(a)(6)"), including the conditions and procedures under which ICE may revoke release. 8 C.F.R. §§ 241.4(l), 241.13(i). First, ICE may revoke release when a noncitizen violates a condition of their OSUP. *Id.* §§ 241.4(l)(1), 241.13(i)(1). Second, ICE may revoke release when, "on account of changed circumstances, [ICE] determines that there is a significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future." *Id.* § 241.13(i)(2). Third, certain officials may exercise their discretion to revoke the release. *Id.* § 241.4(l)(2).

Upon revocation of release, ICE must provide the noncitizen a copy of the decision "set[ting] forth the reasons for the continued detention." *Id.* § 241.4(d). Additionally, the noncitizen must be "notified of the reasons for revocation" and be afforded "an initial informal interview promptly . . . to respond to the reasons for revocation stated in the notification." *Id.* §§ 241.13(i)(3), 241.4(l)(1). Failure to comply with these procedural requirements may constitute a due process violation. *See Santamaria Orellana v. Baker*, No. 25-1788-TDC, 2025 WL 2444087, at *6 (D. Md. Aug. 25, 2025) ("[T]hese regulations are intended to provide due process in that they are fairly construed to be part of a procedural framework designed to ensure the fair processing of an action affecting an individual." (citation modified)).

### 2.  Analysis

Here, Petitioner is likely to succeed on the merits of his Revocation Claim. First, while Petitioner was provided the Notice upon the revocation of his release, the Notice fails to "set forth the reasons for the continued detention," 8 C.F.R. § 241.4(d), or notify Petitioner "of the reasons for revocation," *id.* §§ 241.13(i)(3), 241.4(l)(1). Rather, the Notice merely states the decision to revoke Petitioner's release was "based on a review of [Petitioner's] immigration and criminal history." [Suarez Decl., Ex. A]. However, these vague and conclusory assertions do not

identify any specific "changed circumstances" or otherwise explain why Petitioner's release is being revoked.[3]

Thus, ICE has violated its own regulations in re-detaining Petitioner without providing adequate notice of the grounds for revocation. *See, e.g.*, *Esmail v. Noem*, No. CV-25-08325-WLH-RAOx, 2025 WL 3030590, at *5 (C.D. Cal. Sep. 12, 2025) (finding a similar notice was "plainly insufficient to convey to Petitioner the grounds for revocation"); *Sun*, 2025 WL 2800037, at *2 ("A pro forma notice

---

[3] To the extent Respondents contend their request for travel documents from the Iranian government constitutes "changed circumstances" justifying Petitioner's re-detention, [*see* Opp. at 6], that argument is unavailing. First, there is no evidence Respondents made such a determination before revoking Petitioner's release, such that Petitioner could be adequately notified upon re-detention. *See Tran v. Noem*, No. 3:25-cv-02391-BTM-BLM, 2025 WL 3005347, at *3 (S.D. Cal. Oct. 27, 2025) (finding Section 241.13 requires a determination of changed circumstances to be made before a noncitizen's release is revoked). Second, even if Respondents made such a determination, they do not meet their burden of making an "individualized determination" of changed circumstances. *Nguyen v. Hyde*, 788 F. Supp. 3d 144, 150 (D. Mass. 2025) (citation modified) ("*Hyde*"); *see also Sun v. Noem*, No. 3:25-CV-02433-CAB-MMP, 2025 WL 2800037, at *2 (S.D. Cal. Sep. 30, 2025) (finding Section 241.13 "place[s] the burden on ICE to show changed circumstances that make removal significantly likely in the reasonably foreseeable future"). For example, Respondents do not demonstrate the Iranian government will approve the travel documents request or has acknowledged receipt of the request. Even if the United States has deported a group of Iranians recently, Respondents provide no evidence affirmatively establishing the existence of a new repatriation agreement. Respondents thus offer "little more than generalizations regarding the likelihood that removal will occur." *Nguyen v. Scott*, No. 2:25-CV-01398, 2025 WL 2419288, at *16 (W.D. Wash. Aug. 21, 2025) ("*Scott*"). As such, Respondents have not established changed circumstances showing a significant likelihood of removal in the reasonably foreseeable future. *See, e.g.*, *Hyde*, 788 F. Supp. 3d at 150-52; *Scott*, 2025 WL 2419288, at *15-18; *Hoac v. Becerra*, No. 2:25-CV-01740-DC-JDP, 2025 WL 1993771, at *4–5 (E.D. Cal. July 16, 2025) ("Respondents have not provided any details about why a travel document could not be obtained in the past, nor have they attempted to show why obtaining a travel document is more likely this time around.").

that gives no information on why release is being revoked, beyond simply that Petitioner 'will be taken into custody for the purpose of removal from the United States,' is insufficient." (citation modified)); *Perez-Escobar v. Moniz*, No. 25-CV-11781-PBS, 2025 WL 2084102, at *2 (D. Mass. July 24, 2025) (finding a similarly vague notice violated ICE's regulations and due process).

Second, it is uncontested that Petitioner has not received an informal interview or otherwise been "afford[ed] an opportunity to be heard." [App. at 7]. Even if Petitioner was granted an informal interview, Respondents failed to provide adequate notice of the grounds for his re-detention and therefore he would not have a meaningful "opportunity to respond to the reasons for revocation." 8 C.F.R. §§ 241.13(i)(3), 241.4(l)(1); *see also Tran*, 2025 WL 3005347, at *3 ("In the stressful context of an [] arrest and revocation of release, in order to give effectual notice of the reasons for renewed detention, due process requires written notice so that the [noncitizen] can prepare for the post deprivation informal interview."). Therefore, it again appears ICE has violated its own regulations in re-detaining Petitioner without providing him any opportunity to contest the revocation of his release. *See Hoac*, 2025 WL 1993771, at *7 (collecting cases in which courts find the petitioner's re-detention unlawful because ICE failed to provide the required interview); *Grigorian v. Bondi*, No. 25-CV-22914-RAR, 2025 WL 2604573, at *10 (S.D. Fla. Sep. 9, 2025) (same).

By failing to notify Petitioner of the reasons for the revocation of his release or provide Petitioner an opportunity to contest those reasons, ICE "thwart[ed]" his ability to challenge his re-detention. *Santamaria Orellana*, 2025 WL 2444087, at *6. Thus, the Court finds Petitioner is likely to succeed on his claim that the revocation of his release violates the Due Process Clause. *See, e.g.*, *Delkash v. Noem*, No. 25-CV-01675-HDV-AGRx, 2025 WL 2683988, at *6 (C.D. Cal. Aug. 28, 2025) ("These procedures are not optional or discretionary; they must be followed, and failure to do so renders the detention unlawful."); *Phan v. Noem*, No. 3:25-CV-02422-RBM-MSB, 2025 WL 2898977, at *3 (S.D. Cal. Oct. 10, 2025) ("ICE failed to comply with the required procedures, thereby violating Petitioner's due process rights.").

Such "unlawful detention and revocation of withholding warrants immediate release." *Delkash*, 2025 WL 2683988, at *1; *see also Ceesay v. Kurzdorfer*, No. 25-CV-267-LJV, 2025 WL 1284720, at *21 (W.D.N.Y. May 2, 2025) ("[B]ecause ICE did not follow its own regulations in deciding to re-detain Ceesay, his due process rights were violated, and he is entitled to release."); *Liu v. Carter*, No. 25-

CV-3036-JWL, 2025 WL 1696526, at *3 (D. Kan. June 17, 2025) ("[B]ecause officials did not properly revoke petitioner's release pursuant to the applicable regulations, that revocation has no effect, and petitioner is entitled to release.").

Even if Section 241.4 grants certain officials broad discretion over revocation, the regulation still requires ICE to provide Petitioner adequate notice and an interview.[4] *See Rodriguez v. Hayes*, 591 F.3d 1105, 1117 (9th Cir. 2010) (explaining Section 241.4 "provides the detainee some opportunity to respond to the reasons for revocation"); *cf. Morton v. Ruiz*, 415 U.S. 199, 235 (1974) ("Where the rights of individuals are affected, it is incumbent upon agencies to follow their own procedures."). Respondents offer no authority to suggest ICE may simply ignore Section 241.4's procedural safeguards in discretionary revocations. *See, e.g., Zhu v. Genalo*, No. 25-CV-06523-JLR, 2025 WL 2452352, at *7–8 (S.D.N.Y. Aug. 26, 2025) (finding Section 241.4's procedural protections apply to discretionary revocations); *Diaz v. Wofford*, No. 1:25-CV-01079-JLT-EPG, 2025 WL 2581575, at *5 (E.D. Cal. Sep. 5, 2025) (same).

Accordingly, the first and most important *Winter* factor weighs in favor of Petitioner with respect to his Revocation Claim.

---

[4] Moreover, Section 241.4 permits only the Executive Associate Commissioner or, in certain circumstances, the district director to revoke Petitioner's release on a discretionary basis. 8 C.F.R. § 241.4(l)(2). Here, the Notice was signed by a Supervisory Detention and Deportation Officer ("SDDO") [*See* Suarez Decl., Ex. A]. The SDDO does not appear to be the Executive Associate Commissioner or the district director, nor does it appear the SDDO was delegated authority to revoke Petitioner's release. *See* 8 C.F.R. § 241.4(c)(4) (authorizing delegation of authority under Section 241.4 to "any person . . . designated in writing"). Thus, to the extent Petitioner's revocation was a discretionary act pursuant to Section 241.4, there is no evidence showing the decision was made by a properly authorized official. *See, e.g., Ceesay v. Kurzdorfer*, 781 F. Supp. 3d 137, 159-62 (W.D.N.Y. 2025) (finding a delegation of authority to revoke release was unlawful); *M.S.L.*, 2025 WL 2430267, at *9–10 (finding the petitioner was entitled to release in the absence of a delegation order giving an assistant field office director authority to revoke release).

### C. Likelihood of Irreparable Harm

"It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017) (citation modified) (quoting *Melendres*, 695 F.3d at 1002). "Deprivation of physical liberty by detention constitutes irreparable harm." *Arevalo v. Hennessy*, 882 F.3d 763, 767 (9th Cir. 2018) (citing *Hernandez*, 872 F.3d at 994). Furthermore, immigration detention imposes collateral irreparable harms on noncitizens' families, including economic burdens and harms to children whose parents are detained. *Hernandez*, 872 F.3d at 995.

Here, as stated above, Petitioner's release has been improperly revoked, and Petitioner has been unlawfully detained in violation of his constitutional right to due process. Petitioner "suffers potentially irreparable harm every day that he remains in custody without a hearing, which could ultimately result in his release from detention." *Cortez v. Sessions*, 318 F. Supp. 3d 1134, 1139 (N.D. Cal. 2018) (citation modified). Further, Petitioner will suffer "patently obvious" irreparable harm if he is removed to a third country without notice and an opportunity to be heard. *Nadari*, 2025 WL 2934514, at *2. Petitioner is—and will continue to be—irreparably harmed absent relief from this Court.

As such, the second *Winter* factor weighs in favor of Petitioner.

### D. Balance of Equities and Public Interest

The final two *Winter* factors "merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009). The Ninth Circuit has recognized "neither equity nor the public's interest are furthered by allowing violations of federal law to continue." *Galvez v. Jaddou*, 52 F.4th 821, 832 (9th Cir. 2022) (affirming the balance of hardships weighed in favor of plaintiffs alleging the government violated the INA). Specifically, in cases involving removal, "there is a public interest in preventing [noncitizens] from being wrongfully removed." *Nken*, 556 U.S. at 436.

Here, because Petitioner has demonstrated a likelihood of success on his Revocation Claim, the balance of equities and public interest "tips sharply" in his favor. *All. for the Wild Rockies*, 632 F.3d at 1135. Moreover, Respondents' interest in enforcing immigration laws is not compelling because "our system does not permit agencies to act unlawfully even in pursuit of desirable ends." *Ala. Ass'n of Realtors v. Dep't of Health & Hum. Servs.*, 594 U.S. 758, 766 (2021) (citing

*Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 582, 585-86 (1952)); *see also Cmty. Legal Servs. in E. Palo Alto v. U.S. Dep't of Health & Hum. Servs.*, 777 F. Supp. 3d 1039, 1045-46 (N.D. Cal. 2025), *appeal dismissed*, No. 25-2358, 2025 WL 1189827 (9th Cir. Apr. 18, 2025) ("[C]ourts regularly find that '[t]here is generally no public interest in the perpetuation of unlawful agency action.'" (quoting *League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016))).

As such, the third and fourth *Winter* factors weigh in favor of Petitioner.

In conclusion, because all four *Winter* factors weigh in favor of Petitioner, Petitioner is entitled to injunctive relief. While Respondents argue the proper relief is remedying the specific procedural defects rather than releasing Petitioner from custody, [*see* Opp. at 7], the Court rejects this argument. As discussed above, Petitioner continues to suffer irreparable harm so long as he remains unlawfully re-detained. *See Esmail*, 2025 WL 3030590, at *6 ("Providing Petitioner an interview ex post facto, while keeping him detained in ICE's custody, would not remedy the apparent constitutional violation that Petitioner has suffered in being re-detained without any measure of due process."). Further, Petitioner's release is necessary to return him to the status quo, which is "the last uncontested status which preceded the pending controversy." *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1210 (9th Cir. 2000) (quoting *Tanner Motor Livery, Ltd. v. Avis, Inc.*, 316 F.2d 804, 809 (9th Cir. 1963)). Here, the last uncontested status is Petitioner's release on supervision before his current re-detention. *See Domingo-Ros v. Archambeault*, No. 25-CV-1208-DMS-DEB, 2025 WL 1425558, at *2 (S.D. Cal. May 18, 2025) ("Petitioners seek a prohibitory injunction because they seek to preserve the status quo preceding this litigation—their physical presence in the United States free from detention."). Accordingly, Petitioner's release from custody is the appropriate remedy.

\* \* \* \* \*

## IV.     CONCLUSION

For the reasons set forth above, the Court orders as follows: Petitioner's Application for Temporary Restraining Order is **GRANTED IN PART**, [Dkt. No. 3], and Respondents are **ORDERED** to immediately release Petitioner from their custody.[5]

The Court recognizes Petitioner intended for his briefing in support of the Application for a Temporary Restraining Order to serve as Petitioner's moving papers for a preliminary injunction.  Accordingly, the Court **ORDERS** as follows:

- Respondents shall file an opposition regarding why a preliminary injunction should not be issued no later than December 29, 2025;

- Petitioner may file a reply no later than January 5, 2026.

The Court **SETS** a hearing on whether a preliminary injunction should issue on **January 9, 2026, at 2:00 p.m.** via Zoom videoconference.[6]  The Court finds good cause to set the hearing outside of the statutory timeline.

**IT IS SO ORDERED.**

---

[5] Federal Rule of Civil Procedure 65(c) permits a court to grant injunctive relief "only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."  Fed. R. Civ. P. 65(c).  "Despite the seemingly mandatory language, 'Rule 65(c) invests the district court 'with discretion as to the amount of security required, if any.'"  *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009) (emphasis removed) (quoting *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003)).  Here, it is unlikely Respondents will incur any significant costs, and requiring a bond "would have a negative impact on plaintiff's constitutional rights, as well as the constitutional rights of other members of the public."  *Baca v. Moreno Valley Unified Sch. Dist.*, 936 F. Supp. 719, 738 (C.D. Cal. 1996).  Accordingly, the Court waives the bond requirement.

[6] The parties can stipulate to an alternative briefing schedule and hearing date, or Petitioner may withdraw the motion for preliminary injunction and vacate the hearing date if he deems it unnecessary.